IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMAL TRAVIAL MACKELL-BEY,　　　　＊
SAMUEL WILLIAMS,
HOWARD EUGENE KING SOLOMON SCOTT,　＊

Plaintiffs,　　　　　　　　　　　　　＊

v.　　　　　　　　　　　　　　　　　＊　　Civil Action No. ELH-18-1507
　　　　　　　　　　　　　　　　　　　　　(Related Case No. ELH-18-1800)
ROBERT TROXELL,　　　　　　　　　　＊　　(Related Case No. ELH-18-2267)
RICKY FOXWELL,
SERGEANT GOULD,　　　　　　　　　　＊

Defendants.　　　　　　　　　　　　　＊

***
## MEMORANDUM OPINION

These consolidated cases arise from an isolated error on October 25, 2017, at Eastern Correctional Institution ("ECI"), a prison in Westover, Maryland. The error resulted in the provision of sausages to inmates at breakfast that contained 2% or less of pork stock.

At the time of the incident, plaintiffs Jamal Travial Mackell-Bey, Howard Eugene King Solomon Scott, and Samuel Williams were inmates housed at ECI. They brought separate suits pursuant to 42 U.S.C. § 1983 against ECI Warden Ricky Foxwell, Dietary Manager Robert Troxell, and Sergeant Terri Gould, a correctional dietary officer. *See* Mackell-Bey, ELH-18-1507, ECF 1-2; ECF 10; ECF 18; Scott, ELH-18-1800, ECF 1; Williams, ELH-18-2267, ECF 1.[1] Claiming that consumption of pork is against their religion, each plaintiff seeks compensatory and punitive damages for defendants' alleged violation of their First Amendment rights.

---

[1] Scott and Williams named Foxwell and Troxell as defendants. Scott Compl., ECF 1 at 4; Williams Compl., ECF 1 at 1. Mackell-Bey originally named "Eastern Correctional Institution – East Dietary" as the sole defendant, and later added Foxwell, Troxell, and Gould in a supplement. Mackell-Bey Compl., ECF 1-2 at 1; ECF 10 at 1; ECF 18 at 1. On August 10, 2018, this court dismissed the suit as to Eastern Correctional Institution – East Dietary. ECF 9.

By Order of August 10, 2018, I consolidated plaintiffs' cases and designated Mr. Mackell-Bey's case as the lead one for filing and docketing purposes. *See* ELH 18-1507, ECF 9. Following consolidation, submissions were docketed only in the lead case. Hereinafter, I shall refer to the lead case, unless otherwise noted.[2]

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 20. Their motion is supported by a memorandum of law (ECF 20-1) (collectively, the "Motion") and several exhibits. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed plaintiffs that the failure to file a response in opposition to the defendants' Motion could result in dismissal of their Complaint. ECF 21. Williams and Mackell-Bey filed responses in opposition to the defendants' Motion (ECF 22; ECF 26), while Scott filed a "Motion To Grant Or, In the Alternative, Motion For Summary Judgment." ECF 27. Defendants did not reply.

Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendants' Motion shall be construed as one for summary judgment and shall be granted. Scott's Motion to Grant or, in the Alternative, Motion for Summary Judgment shall be denied.

## I. Factual Background

Plaintiffs state that on October 25, 2017,[3] while incarcerated at ECI, they ate breakfast, consisting of what they believed to be maple sausage links. *See* Mackell-Bey, ECF 10 at 2; Williams, ECF 1 at 2; Scott, ECF 1 at 2.[4] Thereafter, plaintiffs discovered that the sausages served

---

[2] Scott's case, ELH-18-1880, and Williams's case, ELH-18-2267, were closed as a result of the consolidation.

[3] In Mackell-Bey's Complaint, he asserts that the incident took place on October 26, 2017. ECF 1-2. The discrepancy in the date is of no legal significance.

[4] All citations reflect their electronic pagination.

2

at breakfast contained pork. Mackell-Bey, ECF 1-2 at 2; ECF 10 at 2; Williams, ECF 1 at 2; Scott, ECF 1 at 2. Mackell-Bey claims that he is a practicing member of the religious group known as Moorish Science Temple of America, Inc. Mackell-Bey, ECF 8. Scott claims that he is a devout member of the Nation of Islam. Scott, ECF 1 at 3. Williams claims that he is a Rastafarian. Williams, ECF 1 at 2. All three plaintiffs claim that consuming pork is against their religion. *See* Mackell-Bey, ECF 1-2; ECF 10 at 3; ECF 18; Williams, ECF 1 at 2; Scott, ECF 1 at 3.

As a result of eating the sausages, Mackell-Bey claims that he suffered stomach pains that prompted him to request an appointment with medical staff. Mackell-Bey, ECF 1-2 at 2. According to defendants, Mackell-Bey originally complained of diarrhea on October 22, 2017, which was at least three days before he ate the sausages, and he refused medical treatment on November 2, 2017. *See* ECF 20-6 at 2.

Scott claims that he suffered stomach pains and vomiting spells, and submitted a Sick Call Request form. ECF 10 at 2; ECF 20-5 at 4. When he was seen by medical staff on October 31, 2017, Scott reported that he was "starting to feel better." ECF 20-5 at 2.

Williams submitted a Sick Call Request form dated October 26, 2017, in which he stated that he returned to his cell from eating breakfast on October 25, 2017, and began to vomit starting at 5:15. *See* ECF 20-4 at 2. He subsequently received a nurse medical visit on October 31, 2017, at which time he reported he was "slowly getting better." *Id.* at 3.

Troxell was the Correctional Dietary Manager at ECI during the relevant time. ECF 20-3 (Troxell Declaration), ¶1. In his Declaration, Troxell avers that none of the plaintiffs ever submitted any written request for a non-pork diet on the basis of their respective religious faiths. *Id.* at ¶5. To Troxell's knowledge, during the 27 years of his tenure in the Correctional Dietary department, no inmate has ever requested a non-pork diet on the basis of being a Rastafarian. *Id.*

3

In his response opposing defendants' dispositive motion, Mackell-Bey acknowledges that he did not "make known his religious preference." ECF 26 at 1. According to ECI's case management system, Scott indicated on December 17, 2011, that his religious affiliation was both "Protestant Apostolic" and "Nation of Islam-Farrakhan." *Id.* at 34. During Williams's incarceration at ECI, he signed and dated a Religious Preference Registration form that included a staff witness signature, informing ECI staff of the faith group that he intended to practice. ECF 20-2 at 32-33. On a form dated August 17, 2015, Williams selected "Rastafari" as his religion. *Id.*

Troxell maintains that, in accordance with Maryland Department of Public Safety and Correctional Services ("DPSCS") policy, "no prison inmate food items of any kind may contain any pork or pork by-products out of general consideration of established Muslim and Jewish religious dietary restrictions, which forbid consumption of any pork[.]" ECF 20-3 at ¶3. Moreover, "[c]ertified Halal and Kosher diets are provided for Muslim and Jewish inmates, respectively, on the basis of widely recognized and established Muslim and Jewish religious convictions." *Id.* at ¶4. However, those religious diets are "only provided to inmates who submit a written dietary request and have been approved by the prison chaplain once the chaplain has interviewed them individually to ascertain the veracity and sincerity of their respective religious faiths to warrant accommodation of a religious diet rather than the general population meals." *Id.*

Notably, at the relevant time, the DPSCS did not order sausages with any pork. An invoice dated September 27, 2017, reflects that ECI contracted to purchase 192 cases of turkey maple sausage links from a commercial food vendor. ECF 20-2 at 3. Of import here, the invoice expressly states, in part: "Sausage, Turkey Maple Link . . . ." *Id.* Payment was due by October 27, 2017. *Id.* And, the purchase requisition (*id.* at 4) indicates an "Item Description" of "Turkey

4

Sausage Links." Further, the "Receiving Report" describes the "articles" as "Turkey Sausage links." *Id.* at 5.

Also of relevance, all commercial vendors supplying inmate food items to ECI are explicitly informed prior to sale that any food items must not contain any pork or pork by-products, in accordance with DPSCS policies. *See* ECF 20-3 at ¶6. Troxell avers that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* Defendants also expect ECI staff to comply with the Directives and ECI policies regarding inmate meals. *Id.* at ¶7; ECF 20-7 at ¶3. Defendants do not dispute, however, that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017. *See* ECF 20-1 at 5.[5]

On October 27, 2017, Williams filed ARP complaint ECI-2874-17, and on October 28, 2017, Scott filed ARP complaint ECI-2789-17. ECF 20-2 at 6-7, 17-18. Both plaintiffs asserted that by serving pork at breakfast on the date in question, ECI staff violated their First Amendment right to practice their religion. *Id.* Both plaintiffs also stated that based on their respective religions, they are "not allowed to eat any kind of pork products because it's unholy and unpure." *Id.* They sought, *inter alia*, monetary compensation. *Id.*

When responding to an ECI inmate's ARP complaint, Defendant Foxwell relies on the review and investigation by the staff. ECF 20-7 at ¶4. During the investigation of plaintiffs' ARP complaints by ECI staff, a correctional officer assigned to the "feed up" meal duty for October 25, 2017, provided a statement indicating that, to the officer's knowledge, no pork products were purchased or served in the DOC [Division of Correction], that the food item in question was turkey sausage, and that eggs were available if any inmate wanted a substitute. ECF 20-2 at 8.

---

[5] Eggs were available upon request. ECF 20-1 at 5.

5

On November 17, 2017, Foxwell provided the following response to Williams's ARP complaint, *id.* at 6:

> Your request for Administrative Remedy has been investigated and is Meritorious in Part; upon review of reports from staff and supporting documentation, it has been determined that sausage that contained 2% or less dehydrated pork stock on 10/25/17. This was served as an oversite [sic] by multiple departments and the vendor. This product has been pulled and will not be served in the future. Per the Chaplains [sic] office; not to eat pork is a religious preference. Eating of pork products does not cause health issues. Staff has been advised to check labels prior to serving.

Foxwell provided a similar response to Scott's ARP complaint on January 3, 2018. *Id.* at 17.

Both Williams and Scott appealed their respective ARP complaints, stating they each "suffered from severe migraine headaches, abdominal pain, fatigue and nausea." *Id.* at 15, 31. The Commissioner of Correction dismissed both appeals, stating: "You were advised in the warden's response that staff has been advised to check labels prior to serving." *Id.* at 10, 27. The Commissioner also advised Williams and Scott that the relief or remedy they sought would not be provided. *Id.*

## II. Standard of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable

6

opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954,

7

961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion

8

when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

None of the plaintiffs have filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

9

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d

431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiffs are self-represented, their submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III.    Discussion

In their Motion, defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6), or summary judgment under Rule 56. They argue that (1) no facts are alleged against Troxell and Gould; (2) they are entitled to qualified immunity; (3) Foxwell and Troxell did not personally participate in the alleged wrongdoing; (4) no First Amendment violation occurred; (5) no due process violation occurred based on a violation of DPSCS's policies and procedures; (6)

Scott has no constitutional right to criminal prosecution of defendants; and (7) Scott's claim of physical harm from consuming pork is not cruel and unusual. ECF 11-1.

To be sure, inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)). Therefore, prisoners must be afforded "reasonable" opportunities to practice their religion. *Cruz*, 405 U.S. at 322. This includes the "right to a diet consistent with [the inmate's] . . . religious scruples." *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). A prison official violates this right if he intentionally, and without adequate justification, denies an inmate a diet that is religiously mandated. *Lovelace v. Lee*, 472 F.3d 124, 199 (4th Cir. 2006).

However, only intentional conduct is actionable under the Free Exercise Clause of the First Amendment. *Lovelace*, 472 F.3d at 201. The Fourth Circuit has held that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.* Therefore, a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* Similarly, an official's negligent act does not implicate the Due Process Clause. *Id.*

Here, plaintiffs failed to assert that defendants engaged in a conscious or intentional interference with their right to practice their religion. First, plaintiffs made no effort either to inform ECI staff of their religious belief that required them to abstain from eating pork, or to request a religious diet based upon that belief. Second, there is not a shred of evidence of intentional conduct on the part of defendants.

Defendants do not dispute that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017. *See* ECF 20-1 at 5. But, they have amply

demonstrated that ECI staff ordered and intended to purchase turkey maple sausage links from a commercial food vendor. ECF 20-2 at 3-5. Moreover, the vendor was explicitly informed prior to sale that food items may not contain any pork or pork by-products, in accordance with DPSCS policy. ECF 20-3, ¶ 6. Defendant Troxell also stated that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* Unexpectedly, and contrary to the purchase order that had been placed, the vendor provided sausage with pork in it.

Section 1983 of 42 U.S.C. incorporates a causation requirement. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). In response to defendants' evidence, plaintiffs must show that the defendants' policies are the cause of the alleged burden on their exercise of religion. *Wright v. Lassiter*, ___ F.3d ___, 2019 WL 1645790, at *4 (4th Cir. April 17, 2019). In other words, they must show that their injuries "would not have occurred but for defendant's conduct." *Id.* (citing *Burrage v. United States*, 571 U.S. 204, 214 (2014)). This they have not done.

At most, a defendant was perhaps negligent for failing to check the food labels upon receipt, although such an omission would seem like a stretch. The fault was with the vendor. In any event, defendants sought to correct any such error in the future by advising staff, going forward, "to check labels prior to serving." *See* ECF 20-2 at 6.

In sum, there is no dispute of material fact. The evidence, when viewed in the light most favorable to plaintiffs, shows that no First Amendment violation occurred. *See Johnson-Bey v. Indiana Dep't of Corr.*, 668 F. Supp. 2d 1122, 1129 (N.D. Ind. 2009) (holding that a single instance of being fed pork cannot support a claim that inmates were denied their First Amendment right to freedom of religion or a claim that the food service personnel violated the Fourteenth Amendment's equal protection clause); *accord Johnson v. Varano*, No. 714 C.D. 2010, 2011 WL

10843816, at *6 (Pa. Commw. Ct. Mar. 9, 2011) (stating that "a single incident of being inadvertently served pork does not deprive [an inmate] of the right to the free exercise of his faith").

## IV. Conclusion

No genuine issue as to any material fact is presented, and defendants are entitled to a judgment as a matter of law.[6]

A separate Order follows.

May 14, 2019　　　　　　　　　　　　　　_____/s/_____
Date　　　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[6] In light of the court's ruling, an analysis of defendants' remaining arguments is not necessary.